## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

KENNETH M. SEEWAGEN, III,

              Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

1:18-cv-01818-NLH

**OPINION**

---

**APPEARANCES:**

KELLY A. OHLERT
BROSS & FRANKEL, P.A.
102 BROWNING LANE
BUILDING C-1
CHERRY HILL, NJ 08003

    *On behalf of Plaintiff*

ANDREW CHARLES LYNCH
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability

Insurance Benefits ("DIB")[1] under Title II of the Social Security Act. 42 U.S.C. § 423, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, March 27, 2011. For the reasons stated below, this Court will affirm that decision.

## I. BACKGROUND AND PROCEDURAL HISTORY

On April 23, 2013, Plaintiff, Kenneth M. Seewagen, III, protectively filed an application for DIB,[2] alleging that he became disabled on March 27, 2011. Plaintiff claims that he can no longer work in his prior jobs in the food, retail, and warehouse industries because of his various severe mental and physical impairments, including a left knee impairment and depression, anxiety, and PTSD.

Plaintiff's initial claim was denied on August 9, 2013 and upon reconsideration on January 24, 2014. Plaintiff requested a

---

[1] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months. 42 U.S.C. § 423 et seq.

[2] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits. That date may be earlier than the date of the formal application and may provide additional benefits to the claimant. See SSA Handbook 1507; SSR 72-8.

hearing before an ALJ, which was held on March 31, 2016.  After

Plaintiff submitted supplemental medical records in May 2016,

the ALJ issued an unfavorable decision on September 16, 2016.

Plaintiff's Request for Review of Hearing Decision was denied by

the Appeals Council on December 5, 2017, making the ALJ's

September 16, 2016 decision final.  Plaintiff brings this civil

action for review of the Commissioner's decision.

## II. DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial

review of the Commissioner's decision to deny a complainant's

application for social security benefits.  <u>Ventura v. Shalala</u>,

55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold

the Commissioner's factual decisions where they are supported by

"substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3);

<u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001); <u>Sykes v.

Apfel</u>, 228 F.3d 259, 262 (3d Cir. 2000); <u>Williams v. Sullivan</u>,

970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means

more than "a mere scintilla."  <u>Richardson v. Perales</u>, 402 U.S.

389, 401 (1971)(quoting <u>Consolidated Edison Co. V. NLRB</u>, 305

U.S. 197, 229 (1938)).  It means "such relevant evidence as a

reasonable mind might accept as adequate to support a

conclusion."  <u>Id.</u>  The inquiry is not whether the reviewing

court would have made the same determination, but whether the

Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'"  Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although

an ALJ, as the fact finder, must consider and evaluate the

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here

is no requirement that the ALJ discuss in its opinion every

tidbit of evidence included in the record," Hur v. Barnhart, 94

F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review,

a district court is not "empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder."

Williams, 970 F.2d at 1182.  However, apart from the substantial

evidence inquiry, a reviewing court is entitled to satisfy

itself that the Commissioner arrived at his decision by

application of the proper legal standards.  Sykes, 228 F.3d at

262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983);

Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for DIB**

The Social Security Act defines "disability" for purposes

of an entitlement to a period of disability and disability

insurance benefits as the inability to engage in any substantial

gainful activity by reason of any medically determinable

5

physical or mental impairment which can be expected to result in
death, or which has lasted or can be expected to last for a
continuous period of not less than 12 months.  <u>See</u> 42 U.S.C. §
1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as
disabled only if her physical or mental impairments are of such
severity that she is not only unable to perform her past
relevant work, but cannot, given her age, education, and work
experience, engage in any other type of substantial gainful work
which exists in the national economy, regardless of whether such
work exists in the immediate area in which she lives, or whether
a specific job vacancy exists for her, or whether she would be
hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B)
(emphasis added).

The Commissioner has promulgated regulations[3] for
determining disability that require application of a five-step
sequential analysis.  <u>See</u> 20 C.F.R. § 404.1520.  This five-step
process is summarized as follows:

1. If the claimant currently is engaged in substantial
   gainful employment, she will be found "not disabled."

2. If the claimant does not suffer from a "severe
   impairment," she will be found "not disabled."

---

[3] The regulations were amended for various provisions effective
March 27, 2017.  <u>See</u> 82 F.R. 5844.  Social Security Rulings 96-
2p, 96-5p, and 06-03p were rescinded.  <u>See</u> 82 F.R. 15263.  The
ALJ cited to these SSRs, but because the ALJ issued his decision
before this date, the amendments are not applicable to
Plaintiff's appeal.

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work which exists in the national economy. If she is incapable, she will be found "disabled." If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v.

<u>Schweiker</u>, 703 F.2d 751, 753 (3d Cir. 1983).

**C.   Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  At step two, the ALJ found that Plaintiff had the serve impairments of lumbar degenerative disc disease, post traumatic internal derangement to the left knee, aggravation of pre-existing chondromalacia to the patellofemoral joint of the left knee, major depressive disorder, post-traumatic stress disorder ("PTSD"), generalized anxiety disorder, learning disorder and borderline intellectual functioning.  At step three, the ALJ determined that Plaintiff's severe impairments or his severe impairments in combination with his other impairments did not equal the severity of one of the listed impairments.

The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with certain restrictions.[4]  After considering a vocational expert's testimony, the ALJ concluded that Plaintiff's RFC did not enable him to perform his past relevant work, but he was capable of performing jobs such as an addressing clerk, final assembler – optical goods, and surveillance system monitor (steps four and

---

[4] 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

five).

Plaintiff's appeal of the ALJ's decision presents three issues: (1) Whether the ALJ erred in rejecting the opinions of the treating and examining sources with regard to Plaintiff's physical impairments and mental impairments; (2) Whether the ALJ erred in rejecting the Third-Party Function Report of Plaintiff's wife; and (3) Whether the ALJ erred in failing to perform a complete function-by-function analysis.

**1. Whether the ALJ erred in rejecting the opinions of the treating and examining sources with regard to Plaintiff's physical and mental impairments**

Beginning with Plaintiff's challenge to the ALJ's assessment of the medical evidence, the Court finds that substantial evidence supports his conclusion that Plaintiff retained the RFC to perform sedentary work despite his physical and mental impairments. "[A]n ALJ is permitted to accept or reject all or part of any medical source's opinion, as long as the ALJ supports his assessment with substantial evidence." Plummer v. Apfel, 186 F.3d 422, 439 (3d Cir. 1999)); see also Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("We are also cognizant that when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them. . . . [W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was

rejected."); Chandler v. Commissioner of Social Sec., 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c); 20 C.F.R. § 404.1527(d)(1)-(2); SSR 96-6p) (other quotations, citations, and alterations omitted) ("The ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations. Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, the law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity, and state agent opinions merit significant consideration as well.").

Here, the ALJ has readily satisfied this obligation. In a detailed and thorough decision, the ALJ meticulously set forth his reasoning, with detailed support from the record evidence, for why he accepted and rejected the opinions of Plaintiff's treating physicians and the consultative examiners. For both Plaintiff's physical and mental impairments, the ALJ specifically discussed the content of each treating and examining source's opinion, explained what weight he provided to that opinion, and cited to the record evidence that discounted or supported his determinations. (R. at 30-37.)

Ultimately, the ALJ found that even though Plaintiff, who was 34 years old at the time of his application, experienced pain, the record did not support the severity complained of by

Plaintiff.  As for his lumbar pain, the imaging revealed minimal findings, he did not go to physical therapy as directed, he did not seek treatment with a specialist, he refused steroids and an injection, and he still engaged in many daily activities, such as gardening.  (R. at 30.)

As for Plaintiff's knee pain, the ALJ noted that Plaintiff underwent one MRI in 2011, which did not show significant pathology or a torn ligament as Plaintiff reported to one physician; Plaintiff did not undergo a subsequent MRI despite the recommendation of several doctors; Plaintiff's symptoms were a result of disuse atrophy, and physical therapy would alleviate that condition, but Plaintiff failed to attend physical therapy; and Plaintiff did not follow-up with an orthopedist as recommended.  (R. at 30-31.)

With regard to Plaintiff's mental impairments, the ALJ found that Plaintiff underwent sporadic mental health treatment prior to 2015, when he started treatment with a psychiatrist who monitored his medication and provided therapy.  By January 2016, Plaintiff's mental health status examination was within normal limits.  Additionally, all the medical records from the alleged onset date in March 2011 through 2016 showed that Plaintiff had only mild to moderate symptoms.  (R. at 38.)  Moreover, Plaintiff reported that his pain levels decreased overall after he started treatment for depression.  (R. at 31-33.)

Plaintiff challenges the ALJ's consideration of each of the medical providers' opinions, but the Court finds that the bulk of his challenges amount to simple disagreement with what the ALJ found credible rather than a lack of record evidence to support his decision. See, e.g., Perkins v. Barnhart, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."); Moody v. Commissioner of Social Security Administration, 2016 WL 7424117, at *8 (D.N.J. 2016) ("[M]ere disagreement with the weight the ALJ placed on the opinion is not enough for remand."); Grille v. Colvin, 2016 WL 6246775, at *8 (D.N.J. 2016) ("Distilled to its essence, Plaintiff's argument here amounts to nothing more than a mere disagreement with the ALJ's ultimate decision, which is insufficient to overturn that decision."). The Court will therefore affirm the ALJ's assessment of Plaintiff's physical and mental impairments because all of his findings are substantially supported by record evidence. Hartzell v. Astrue, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (explaining that a court may not second guess the ALJ's conclusions, but may only determine whether substantial evidence supports the ALJ's determinations) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (explaining that the pinnacle legal principal that applies to the assessment of all of the other

standards: A district court is not empowered to weigh the evidence or substitute its conclusions for those of the ALJ)).

The Court, however, will directly address two more specific arguments advanced by Plaintiff.  One challenge Plaintiff mounts to the ALJ's consideration of the medical evidence regarding Plaintiff's physical impairments is Plaintiff's failure to follow through with prescribed medical testing, medication, and physical therapy.  Plaintiff argues that because he was injured in a workplace accident, his medical care was dictated by Worker's Compensation insurance, which would not cover certain treatments, and he could not otherwise afford such tests and treatments.  Plaintiff argues that his lack of compliance with diagnostic and treatment options should not be held against him.

The Court finds Plaintiff's argument to be without merit. First, the record evidence cited by Plaintiff to support his position (R. at 269-70, 294-95) does not indicate that Plaintiff's Worker's Compensation insurance was the barrier to all his prescribed treatment.  It was noted in a January 24, 2012 medical evaluation that Plaintiff injured his knee at work on March 27, 2011 (R. at 270), and in October 2013 Plaintiff stated to a doctor that he "financially cannot obtain surgery" (R. at 294),[5] but Plaintiff cites to no evidence that his

---

[5] The ALJ recounted this doctor note in his decision.  (R. at 34.)

Worker's Compensation insurance denied the tests and treatment prescribed by his doctors, including less invasive treatments like medication and physical therapy.[6]

Second, even accepting that financial inability precluded him from pursing the treatment recommendations of his physicians, the ALJ did not consider Plaintiff's lack of compliance with those recommendations, standing alone, to negate Plaintiff's complaints of pain and physical limitations. Instead, the ALJ considered Plaintiff's non-compliance as a factor in determining whether Plaintiff's pain and limitations were as severe as he claimed. In other words, Plaintiff's failure to undergo even the most conservative treatment for his

---

[6] 20 C.F.R. § 416.930(b) provides, "If you do not follow the prescribed treatment without a good reason, we will not find you disabled or blind . . . ." SSR 16-3p provides, "Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent. In contrast, if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. . . . When we consider the individual's treatment history, we may consider . . . An individual may not be able to afford treatment and may not have access to free or low-cost medical services."

back and knee impairments, coupled with his daily living activities and other medical evidence, supported the ALJ's conclusion that Plaintiff retained the RFC to perform sedentary work. This finding, and how the ALJ came to his conclusion, is in compliance with the Social Security rules and regulations. 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c) (RFC finding is a determination expressly reserved to the Commissioner, not medical providers); 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . .").

Plaintiff's next main challenge to the ALJ's consideration of the medical evidence concerns Plaintiff's claim that he needs to elevate his leg. Plaintiff argues that his need to keep his leg elevated most of the day negates the ALJ's RFC determination, and the ALJ failed to properly credit this limitation.

Contrary to Plaintiff's argument, the ALJ properly considered Plaintiff's claim that he needs to elevate his leg. The ALJ noted that Plaintiff testified about a need to elevate his left leg. The ALJ detailed medical findings that did not support "a need to elevate the claimant's left leg for the length of time the claimant alleged or the need to do so on a consistent basis" (R. at 30), and the ALJ did not "find the

claimant's allegations of a need to elevate his leg to what is essentially an entire work week to be persuasive" (R. at 31). Although Plaintiff may disagree with the ALJ's determination, the ALJ properly supported his finding with the medical evidence.[7]

### 2. Whether the ALJ erred in rejecting the Third-Party Function Report of Plaintiff's wife

Plaintiff argues that the ALJ did not properly consider the reports and testimony of Plaintiff's wife, Jennifer Seewagen, regarding Plaintiff's impairments and their effect on his daily living activities. The ALJ's decision provides the following with regard to Ms. Seewagen:

> The claimant's wife, Jennifer Seewagen, completed a Third Party Adult Function Report on May 3, 2013 (Exhibit 4E). The claimant could manage his personal care needs but his physical impairments affected his functioning. The claimant could prepare meals. He cleaned, started the laundry and mowed the lawn. He shopped in stores. He managed his financial matters. . . . The claimant spent time with others. He had difficulty getting along with others because his father attacked him so he had no communication with his father. He had difficulty getting along with authority figures. He had never been fired from a job due to problems getting along with others. . . . The claimant needed reminders to go places. He did not need reminders to take his medication or to manage his personal care needs. He had difficulty with memory and stress. He alleged no difficulty with concentration, paying attention, following instructions and changes in routine. (R. at 19, 20.)

> The undersigned notes that the [] claimant and Ms.

---

[7] This analysis also applies to Plaintiff's argument that the ALJ failed to perform a function-by-function analysis by not accounting for Plaintiff's need to elevate his leg.

Seewagen alleged difficulty with memory and stress
(Exhibits 3E and 4E). (R. at 21.)

Under Social Security regulations, Ms. Seewagen, as
the claimant's wife, is not an acceptable medical source
(20 CFR 404.1513(d)). After acknowledging the expansion in
treatment by medical sources that do not fall under the
acceptable medical source standard, the agency promulgated
SSR 06-03p to address situations when non-acceptable
sources provided ongoing care to claimants and subsequently
issued an opinion in support of a disability claim.

According to SSR 06-03p, to consider whether Ms.
Seewagen's opinion can be accepted and outweigh other
acceptable medical source opinions, the following factors
must be reviewed:

- How long the source has known and how frequently the
  source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant
  evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of
  expertise related to the individual's impairment(s),
  and
- Any other factors that tend to support or refute the
  opinion.

After reviewing the factors under SSR 06-03p, the
undersigned concludes that Ms. Seewagen's opinion should be
afforded little weight (Exhibit 4E). There is no
indication in the medical record that Ms. Seewagen has a
background in medicine or medical training. She is not in
a treatment relationship with the claimant. However, she
has known the claimant for many years. The undersigned
assigns some, but not greater, weight to her opinion for
the reasons noted in Finding 4 above when considering each
category. (R. at 37.)

Plaintiff argues that the ALJ erred because he discounted

her lay testimony as that of a non-expert and that such a

premise is circular because it would, in effect, negate the

mandate of SSR 06-03p to consider lay opinion from non-

acceptable sources under certain circumstances.  Plaintiff also
argues that it is incongruous for the ALJ to simultaneously
assign little weight to her opinion, but at the same time assign
some weight to her opinion, and in any event, neither position
is adequately explained.

In evaluating lay testimony, the ALJ must follow the
guidance set forth in SSR 06-03p by evaluating the relevant
factors, assessing the credibility of certain evidence, and
explaining why he found certain evidence to be not credible.
Zirnsak v. Colvin, 777 F.3d 607, 613 (3d Cir. 2014).  The ALJ
properly did so here.

The Court does not find the ALJ's consideration of Ms.
Seewagen's testimony to be incongruous or unexplained in the
context of SSR 06-03p.  The ALJ clearly assigned little weight
to Ms. Seewagen's opinions regarding the nature of Plaintiff's
physical and mental impairments because she did not have "a
background in medicine or medical training," and she was "not in
a treatment relationship with the claimant."  (R. at 37.)  This
analysis complies with SSR 06-03p.

First, this finding directly addresses a factor that SSR
06-03p requires the ALJ to consider – i.e., whether the
otherwise "non-acceptable source" lacked "a specialty or area of
expertise related to the individual's impairment."  Second, it
does not follow that discounting an opinion for the reasons

stated equates to a circular finding that the opinion is merely from a non-acceptable medical source. There are many types of medical professionals who might not qualify under SSA regulations as an acceptable medical source who otherwise provide treatment and have some degree of specialized training or experience in the broad field of medical care and treatment. See, e.g., Hevner v. Commissioner Social Security, 675 F. App'x 182, 185 (3d Cir. 2017) (citing SSR 06-03p) (explaining that "[a]lthough Tardivo is a physician's assistant and not a medical doctor, her opinion and treatment notes may "provide insight into the severity of the impairment[ ] and how it affects the individual's ability to function," and thus are still entitled to some weight as an "other source"). All the regulation requires is that a lay opinion from someone with that background be given greater weight than someone who lacks such training or experience. The opposite is also true. A lay opinion from someone without such training or experience may be less persuasive. See, e.g., Kimble v. Commissioner of Social Security, 2017 WL 4268035, at *11–12 (D.N.J. 2017) (rejecting the plaintiff's argument that the ALJ erred by not affording greater weight to his wife's statements, which the plaintiff had argued were not merely lay opinions since they were supported by the medical record, because the medical evidence did not actually corroborate the statements of the plaintiff's wife, who

had no medical background). Here, the ALJ properly considered the lack of such training and experience in his overall assessment of Ms. Seewagen's testimony.

The ALJ also properly addressed two other factors – how long the source has known and how frequently the source has seen the individual as well as how consistent the opinion is with other evidence – in providing some weight to Ms. Seewagen's testimony. As quoted above, the ALJ recited Ms. Seewagen's observations on the third-party function report, and credited some of Ms. Seewagen's observations as consistent with the record evidence, which actually supported Plaintiff's residual functional capacity.

This Court must defer to the ALJ's assessment of Ms. Seewagen's reports about her husband, especially where they corroborate the ALJ's disability determination. Zirnsak, 777 F.3d at 613 (citing Diaz v. Commissioner of Social Sec., 577 F.3d 500, 506 (3d Cir. 2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions."). That the ALJ afforded "some" weight to certain SSR 06-03p factors and "little weight" to certain testimony after considering other factors in the regulation is not error; it is evidence of a careful application

of the regulation to the evidence.

**3.    Whether the ALJ erred in failing to perform a complete function-by-function analysis**

Finally, Plaintiff argues that the ALJ failed to perform a function-by-function analysis in determining Plaintiff's RFC because he did not account for Plaintiff's limitations in sitting, standing, walking, lifting, carrying, and the need to elevate his leg.  This argument is without merit.

"The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms."  SSR 96-8P.  The ALJ found Plaintiff's RFC to be the following:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that he can engage in work-related activities with occasional pushing and pulling with the left lower extremity, uses a cane with the non-dominant hand for ambulation and balancing, occasional climbing, balancing, stooping, kneeling, crouching and crawling, avoid concentrated exposure to hazards such as unprotected heights and moving machinery, further limited to unskilled work involving simple one to two step tasks with occasional changes in the work setting, no quota or production based work but rather goal oriented work, and occasional interaction with co-workers, supervisors and members of the public.

(R. at 23.)

Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket

21

files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567.

As set forth above, the ALJ thoroughly detailed the evidence relating to Plaintiff's mental and physical impairments, along with Plaintiff's testimony and the testimony of his wife.  The ALJ then explained which evidence he credited and discredited, and why.  Based on that extensive analysis, he formulated Plaintiff's RFC, which addressed the functional limitations he found to be supported by the record.  The ALJ therefore did not err in this regard.

### III. Conclusion

For the foregoing reasons, the ALJ's determination that Plaintiff was not totally disabled as of March 27, 2011 is supported by substantial evidence.  The decision of the ALJ is therefore affirmed.

An accompanying Order will be issued.


Date:  April 10, 2019              s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.